

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 22, 2025

BY ECF
Honorable Hector Gonzalez
United States District Judge
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>*Pavlotskiy v. Joyce, et al.,* No. 25-cv-4622 (HG)</u>

Dear Judge Gonzalez:

This Office represents Defendants William Joyce, Acting Field Office Director of the New York Immigration and Customs Enforcement Office, Todd Lyons, Acting Director of United States Immigration and Customs Enforcement ("ICE"), Kristi Noem, Secretary of the United States Department of Homeland Security ("DHS"), and Pam Bondi, Attorney General of the United States in the above-referenced action. Yesterday, August 21, 2025, Your Honor scheduled a conference for 11:00 a.m. today with respect to Plaintiff's motion for an "Order to Show Cause and Temporary Restraining Order ("TRO")," filed on August 20, 2025 (the "TRO Motion") (Dkt. No. 2). For the reasons set forth below, the Court should deny the TRO Motion, including but not limited to: (1) for lack of ripeness; or (2) alternatively, as jurisdictionally barred by statutes and because Plaintiff cannot state a procedural due process claim; and (3) because Plaintiff cannot demonstrate irreparable harm.

## I. Relevant Background

After entering the United States from what was then the United Soviet Socialist Republic ("USSR"), Plaintiff Vadim Pavlotskiy was convicted of multiple felonies, *inter alia*, the possession of a firearm and conspiracy to entice individuals to engage in prostitution and to travel interstate. Dkt. No. 2 ¶¶ 3, 5; Ex. A.[1]

Thereafter, he was detained by ICE and was placed in removal proceedings; on or about May 23, 2008, he stipulated to removal to Ukraine. Dkt. No. 1 ¶ 6; Dkt. No. 2 ¶ 6. USSR's successor country, Ukraine, rejected his application and responded that they had no record of him being a citizen. Dkt. 2 ¶ 6. On or about September 10, 2008, ICE released him from detention pending his removal from the United State; his release was subject to written conditions set forth in an Order of Supervision (the "OSUP"). *Id.* ¶ 7, Ex. B.

The OSUP, *inter alia*, requires Plaintiff to check-in with ICE periodically, which he has allegedly regularly done. *Id.* ¶ 8. Most recently, Plaintiff was scheduled to appear for a check-in with ICE on August 7, 2025 at 26 Federal Plaza in Manhattan, New York but acknowledges that he failed to appear. *Id.* ¶ 12. He contends this was due to anxiety that caused him to go to the hospital on August 7, and that he informed ICE of this hospitalization. *Id.* ¶ 12, Ex. C.

---

[1] The facts in this background are taken from the allegations, except where otherwise noted.

Plaintiff does not allege his check-in has been rescheduled. He does not allege that ICE has threatened to remove him, nor does he allege that he has attempted to challenge any putative or perceived threatened removal administratively, whether at ICE or at the Executive Office for Immigration Review before an immigration judge.

Instead, on August 20, 2025, Plaintiff commenced this action by filing his Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief (the "Complaint") (Dkt No. 1), and thereafter, filed the Motion. In essence, his suit is predicated on his fear that, after the many years he has enjoyed remaining in the United States on the OSUP, now ICE wishes to remove him and that he will shortly be detained to that end. *See* Dkt. No. 1 ¶¶ 60-61, 63 (Plaintiff alleges that he fears re-detention and removal, and claims that he will be irreparably harm by re-detention and removal). The Complaint asserts three claims for relief: (1) a violation of the Fifth Amendment ("Procedural Due Process – Re-Detention"), as to which he seeks an order from the Court that prior to any re-arrest, ICE must provide him with a hearing before a neutral adjudicator (Dkt. No. 1 ¶ 112); (2) a violation of the Fifth Amendment ("Procedural Due Process – Unconstitutionally Inadequate Procedures Regarding Third Country Rmeoval"), in which he seeks an order from the Court that prior to removal to any country not Ukraine, or "third country," Plaintiff must be provided with constitutionally compliant notice and an opportunity to respond and contest (*id.* ¶ 115); and (3) a "Violation of the INA (Re-Detention)", in which he seeks and order that, prior to any re-arrest, the Government must provide him with a hearing before a neutral adjudicator. (*id.* ¶ 120). The Complaint styled as habeas, cites as putative jurisdictional bases 28 U.S.C. § 2241 (habeas corpus), as well as 5 U.S.C. §§ 701-706 of the Administrative Procedure Act (the "APA")), and asserts putative due process violations to the U.S. Constitution (presumably under § 706(2) of the APA barring violations of constitutional law). Dkt. No. 1, ¶ 36.

In the TRO Motion, Plaintiff seeks a TRO enjoining ICE from re-detaining him pending a hearing on Plaintiff's preliminary injunction application to enjoin that same act, unless a hearing can be held before a neutral adjudicator and that prior to any future re-detention, Plaintiff is provided a hearing before an immigration judge. In addition, Plaintiff seeks to enjoin his removal to any third country without first being provided constitutionally compliant procedures. *See* ECF No. 2.

## II. The TRO Motion Should Be Denied

### A. The Heightened TRO Standard Applies

A plaintiff seeking a TRO must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Basank v. Decker*, 449 F. Supp. 3d 205, 210 (S.D.N.Y. 2020); *see also Lazor v. Univ. of Conn.*, No. 21-CV-583 (SRU), 2021 WL 2138832, at *1 (D. Conn. May 26, 2021). "The purpose of a [TRO] is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009). Courts have "held the movant to a heightened standard where: (i) an injunction is 'mandatory,' or (ii) the injunction 'will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *De Jesus Moreno v. Nielsen*, 460 F. Supp. 3d 291, 297 (E.D.N.Y. 2020) (Mauskopf, J.) (citing *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015)). A mandatory injunction alters the status quo, rather than maintains it. *Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020). In a "heightened standard" case, to prevail, the movant must (1) "make a 'strong showing' of irreparable harm, and (2)

2

demonstrate a 'clear or substantial likelihood of success on the merits.'" *Id.* at 127-128*; see also De Jesus Moreno*, 460 F. Supp. 3d at 297. Here, the heightened standard applies as Plaintiff seeks to alter rather than maintain the status quo, i.e., checking in with ICE under the OSUP.

### B. Plaintiff Cannot Show Likelihood Success on the Merits

#### 1. His Action Is Unripe

As an initial matter, Plaintiff is not likely to succeed on the merits of his action because his claims are unripe. The ripeness doctrine is designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). "The ripeness doctrine prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." *United States v. Balon*, 384 F.3d 38, 46 (2d Cir. 2004).

Here, Plaintiff's attorney does not explain why Plaintiff believes it is "highly likely" he will be detained and removed at a future ICE check-in, other than bald speculation: the fact that ICE has recently increased the number of individuals that it has removed or sought to remove. See Dkt. 1 ¶ 60. Indeed, Plaintiff *does not even allege that a check-in has even been rescheduled.* Nor does Plaintiff point to any indication that his OSUP has been revoked. Plaintiff also does not point to any indication that he is going to be removed to a third country.

The "mere possibility" that ICE will remove or attempt to remove Plaintiff at a future ICE check-in does not create a live controversy that is within this Court's jurisdiction under Article III of the United States Constitution. *See Chocho v. Shanahan,* 308 F. Supp. 3d 772, 774-75 (S.D.N.Y. 2018) (Nathan, J.) (possibility that ICE would re-detain Chocho if USCIS denied his visa petition held too speculative to support the court's jurisdiction) (quoting *Pierre-Paul v. Sessions*, 293 F. Supp. 3d 489, 493 (S.D.N.Y. 2018) (Nathan, J.)); *accord Celestine v. Decker,* 17-cv-2419, 2019 WL 7946027, at *2 (S.D.N.Y. July 22, 2019).

Moreover, in the event his OSUP is revoked, Plaintiff might seek administrative relief prior to filing suit in the form of a Form I-246, Application for Stay of Deportation or Removal ("I-246"), or obtaining the process set forth in 8 C.F.R. § 241.4(l). Also, aliens generally have options in seeking to reopen and stay removal proceedings at the Executive Office of Immigration Review. Instead, Plaintiff has run to Court, asserting conjectural claims that are not ripe for review.

#### 2. The Suit is Barred By 8 U.S.C. §§ 1252(a)(5) and § 1252(b)(9)

If *arguendo* within the Court's Article III jurisdiction, the TRO Motion – indeed the action – is barred by immigration statutes. Specifically, 8 U.S.C. § 1252(a)(5) provides in relevant part that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." As a corollary to § 1252(a)(5), 8 U.S.C. § 1252(b)(9) provides that "[j]udicial review of all questions of law and fact" arising from a removal proceeding "shall be available only in judicial review of a final order" of removal, and "no court shall have jurisdiction . . . by any other provision of law . . . to review such an order or such questions of law or fact." Section 1252(a)(5) gives the courts of appeals exclusive jurisdiction over review of final orders of removal. *Ruiz-Martinez v. Mukasey,* 516 F.3d 102, 105 (2d Cir. 2008). The "clear intent'" of Congress in enacting § 1252(a)(5) was "'to have all

challenges to removal orders heard in a single forum,' i.e., the courts of appeals." *Spina v. DHS*, 470 F.3d 116, 124 (2d Cir. 2006) (quotation omitted). "'[T]aken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue – whether legal or factual – arising from *any* removal-related activity can be reviewed *only* through' a petition for review filed with an appropriate court of appeals." *Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 224 (S.D.N.Y. 2019) (quoting *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis by *J.E.F.M.*)); *accord Rodriguez v. Warden, Orange County Correctional Facility*, 23-cv-242, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023).

The Second Circuit has construed §§ 1252(a)(5) and 1252(b)(9) broadly to preclude district courts from exercising subject matter jurisdiction over an action that even "indirectly challeng[es]" an order of removal. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). In determining whether an action challenges an order of removal, the Second Circuit looks to "the substance of the relief that [the] plaintiff is seeking." *Id.*

In the Instant Motion, Plaintiff seeks an order prohibiting Defendants from re-arresting him at the ICE check-in for the purposes of removing him. (*See* Dkt. No. 1 ¶¶ 60-61, 63). Thus, looking "to the substance of the relief" he seeks, *Delgado*, 643 F.3d at 55, Plaintiff is seeking a stay of removal, *i.e.*, a "delay [of] the execution of a removal order." *Troy as Next Friend Zhang v. Barr*, 822 Fed. Appx. 38, 39 (2d Cir. 2020). Many judges in this District and other judges in this Circuit have held that § 1252(a)(5)'s bar on direct or indirect challenges to removal orders preclude district courts from hearing a claim for a stay of removal. Some these decisions also cite § 1252(b)(9). *Noor v. Homan*, 17-cv-1558, 2018 WL 1313233, at *3 (E.D.N.Y. Feb. 26, 2018) (Kuntz, J.) (dismissed such a claim, holding that § 1252(a)(5) "bars a wide range of claims that were held to constitute challenges to removal orders, including requests for stays of removal . . .") (citing *Delgado*, 643 F.3d at 55); *Joseph v. U.S. Attorney General*, 17-CV-5008, 2017 WL 6001776, at *1 (E.D.N.Y. Dec. 4, 2017) (Chen, J.) ("Since District Courts cannot review removal orders, they also cannot consider requests for stays of removal."; citing § 1252(a)(5)); *Akhuemokhan v. Holder*, No. 12-CV-1181, 2013 WL 6913170, at *2 (E.D.N.Y. Dec. 30, 2013) (Bianco, J.) ("to the extent petitioner . . . is seeking a stay of, or any other relief from, his order of removal, this Court lacks jurisdiction to grant such relief"; citing § 1252(a)(5)); *Royale v. INS*, No. 10-CV-2105, 2010 WL 2348651, at *1 (E.D.N.Y. June 9, 2010) (Matsumoto, J.) (district courts lack "jurisdiction to stay an order of . . . removal"; citing § 1252(a)(5)); *Scott v. Napolitano*, 618 F. Supp. 2d 186, 191-92 (E.D.N.Y. 2009) (Vitaliano, J.) (§§ 1252(a)(5) and 1252(b)(9) bar action to stay a removal order); *see also, e.g. Asylum Seeker Advocacy Project v. Barr*, 409 F. Supp. 3d 221, 225, 227 (S.D.N.Y. 2019); *Barros Anguisaca v. Decker*, 393 F. Supp.3d 344, 350 (S.D.N.Y. 2019),

Consistent with *Delgado*, several district courts in this Circuit have held that § 1252(a)(5) bars, as a challenge to a removal order, an action to enjoin ICE from detaining an individual for the purpose of removal – the relief that Plaintiff seeks here. Most recently, *Ceesay v. Bondi*, 25-cv-3716, 2025 WL 1435615, at *2 (S.D.N.Y. May 16, 2025), held § 1252(a)(5) bars, an action for an order prohibiting ICE from detaining Ceesay for the purpose of removing him, because such an order "would require the Court to interfere with the execution of a removal order"; *accord Rodriguez v. Warden, Orange County Correctional Facility*, 23-cv-242, 2023 WL 2632200, at *4 (S.D.N.Y. Mar. 23, 2023) (dismissing action because Rodriguez "seeks an end to his detention, which was undertaken for the precise purpose of effectuating his existing removal orders"); *Bumu v. Barr*, 20-cv-6742, 2020 WL 6465433, at * 3 (W.D.N.Y. Nov. 3, 2020) (§ 1252(a)(5) bars challenge to detention that "threaten[s] the execution of the removal order"); *Chocho*, 308 F. Supp.3d at 774 (a re-detention of Chocho "would result from the removal order . . . and this Court

lacks jurisdiction to hear any challenge to the removal order"); *Achbani v. Homan*, 3:17-cv-1512, 2017 WL 4227649, at *3-5 (D. Conn. Sept. 22, 2017) (dismissing claim for an order prohibiting ICE from detaining the petitioner "in order to effectuate removal"). Likewise, one district court has held that § 1252(a)(5) bars a challenge to ICE's revocation of an OSUP of an individual in anticipation of removing him. *Andoh v. Barr*, 19 Civ. 8016, 2019 WL 4511623, at *3-4 (S.D.N.Y. Sept. 18, 2019).

Thus, Plaintiff's requests for a stay of removal and an order barring ICE from detaining him are challenges to his prior stipulation for removal, which resulted in a removal order -- an indirect challenge, at the very least -- that is barred by §§ 1252(a)(5) and 1252(b)(9).

### 3. The Suit is Barred By 8 U.S.C. § 1252(g)

To the extent the future detention Plaintiff places at the heart of this action is in the furtherance of his removal, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action . . . to execute removal orders against any alien under this chapter." 8 U.S.C. §. 1252(g). Section 1252(g) thereby precludes district courts from issuing an order that would prevent or hinder ICE from executing a removal order, *i.e.*, removing an individual who is the subject of a final order of removal. *Troy,* 822 Fed. Appx. at 39. Three of the decisions cited in Part B.2 above relied in part on § 1252(g) in holding that district courts lack jurisdiction to prohibit ICE from detaining an individual for the purpose of removal. *See Ceesay v. Bondi,* 2025 WL 1435615, at *2; *Rodriguez* 2023 WL 2632200, at *4; *Bumu,* 2020 WL 6465433, at *2-3.

### 4. There Is No Habeas Jurisdiction Here

To the extent Plaintiff seeks to rely on the *habeas* statute, 28 U.S.C. § 2241, his TRO Motion should be denied, and the suit dismissed. The Supreme Court has made it clear that *habeas* jurisdiction may not be predicated on events that did not occur. *Rumsfeld v. Padilla*, 542 U.S. 426, 448 (2004). Plaintiff does not allege that he is presently being detained by ICE or any other federal agency. Plaintiff is under an OSUP, but an OSUP is not a detention for purposes of § 2241. *Akhuemokhan*, 2013 WL 6913170, at *2 (*habeas* claim became moot when the petitioner was released from custody pursuant to an OSUP); *accord Berrezueta v. Decker*, 20-cv-16888, 2021 WL 601649 (S.D.N.Y. Jan. 11, 2021); *Le v. Sessions*, 2018 WL 5620290, at *2 (W.D.N.Y. Oct. 29, 2018); *Denis v. DHS/ICE*, 634 F. Supp. 2d 338, 341 (W.D.N.Y. 2009).

Furthermore, in order for the Court to have *habeas* jurisdiction, Plaintiff would have to be detained in this District. *Trump v. J.G.G.*, 604 U.S. --, --, 2025 WL 1024097, at *1 (2025) (District of Columbia district court lacked *habeas* jurisdiction over action brought by persons detained in Texas) (citing *Rumsfeld*, 542 U.S. at 443). Plaintiff does not allege that he is detained in this District, so this Court lacks *habeas* jurisdiction. *Id.*

### 5. To The Extent Predicated on the APA, The Suit Is Barred For Lack Of Finality

To the extent that Plaintiff predicates the TRO Motion or indeed the suit on the APA, and assuming *arguendo* that his APA claim is within this Court's Article III jurisdiction, and is not barred by 8 U.S.C.§§ 1252(a)(5), 1252(b)(9) and/or 1252(g), the claim is insufficient for lack of the requisite "final agency action." 5 U.S.C. § 704; *6801 Realty Co. v. USCIS*, 719 F. App'x 58,

60 (2d Cir. 2018).[2] In order for agency action to be "final" within the meaning of APA § 704, that action must *both*: (1) "mark the consummation of the agency's decision-making process"; *and* (2) "be one by which rights or obligations have been determined or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citations quotation marks omitted). Finality "allows the agency an opportunity to apply its expertise and correct its mistakes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in 'piecemeal review, which is at the least inefficient, and upon completion of the agency process might prove to have been unnecessary.'" *Air Espana v. Brien*, 165 F.3d 148, 152 (2d Cir. 1999). Here, the requisite finality for APA review is lacking because ICE has not decided to revoke his OSUP, detain, or remove Petitioner; ICE will make those decisions during the check-in. Thus, ICE has not engaged in any action that "mark[s] the consummation of the agency's decision-making process," determines rights or obligations, or leads to "legal consequences will flow", so his APA claims should be dismissed for lack of final agency action. *Bennett*, 520 U.S. at 177-78.

### 6. Plaintiff Fails To State A Procedural Due Process Claim

Even were there no threshold issues as noted above, Plaintiff states no due process claim. To state a claim for procedural due process, a plaintiff must establish (1) a cognizable liberty or property interest, and (2) a deprivation of that interest without being afforded the process that is due. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S. Ct. 893, 901 (1976). As to the first requirement, it is well-established that there is no protected interest in a governmental benefit if "government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *accord Bhaktibal-Patel v. Garland*, 32 F.4th 180, 197 (2d Cir. 2022). Plaintiff cannot satisfy the first requirement because the administrative relief he seeks at the core— *i.e.*, continuation of the OSUP—is discretionary. ICE has the authority to revoke an OSUP and return the alien to ICE custody "in the exercise of its discretion". 8 C.F.R. § 241.4(l)(2). Likewise, the decision to stay removal is "in [the deciding official's] discretion." 8 C.F.R. § 241.6(a). For this reason alone, Petitioner's procedural due process claims fail.

In any event, Plaintiff has failed to identify the process due to him that he has not received. Nor indeed could he credibly do so, since this action is built on stilts and speculation about future action, and instead of engaging in actions he might take to preserve his interests, such as seeking a stay of removal, or applying administrative to ICE using an I-246, he has chosen to preemptively file this suit. *See also* 8 C.F.R. § 241.4(l) (setting forth inter alia, that if an OSUP is revoked for noncompliance, an alien will be "notified of the reasons for revocation" and "afforded an initial informal interview . . . to afford [him] an opportunity to respond to the reasons for notification stated in the notification").

### III. Plaintiff Will Not Be Irreparably Harmed If Injunctive Relief Is Not Granted and the Balance of the Equities Leans to Denying the TRO

As discussed above, Plaintiff claims to fear detention at an ICE check-in which he has failed to allege has been re-scheduled, and that even were it scheduled this fear is based on speculation derived from newspaper accounts. This does not suffice to establish the "strong showing" of irreparable harm that is required. *Yang*, 960 F.3d at 138. The requirement of irreparable harm is a *sine qua non* for the issuance of a preliminary injunction. *St. Joseph's*

---

[2] While it is an "open question" if finality is a jurisdictional requirement, at minimum it implicates "statutory standing," encompassing resolution on "threshold, non-merits grounds." *6801 Realty*, 719 F. App'x at 59 n.1.

*Hospital Health Center v. American Anesthesiology of Syracuse, Inc.*, 131 F.4th 102, 106 (2d Cir. 2025). To establish irreparable harm, the party seeking a preliminary injunction must show harm that is actual, imminent and non-speculative. *Id*. Indeed, in a similar case, *Hart v. Noem*, 25-cv-660 (OEM), where, as here, a plaintiff with a final order of removal released on an OSUP, and sought habeas relief based on fear of a future check-in, the court denied the plaintiff's motion for a temporary restraining order and/or a preliminary injunction owing to lack of irreparable harm. *See* May 5, 2025 Dkt. Entry. In any event, to the extent that his suit is predicated on his fears that the bill has come due for his own criminal conduct, that does not outweigh the fact that Plaintiff is a felon who is removable but has already enjoyed the grace of remaining in the United States for an additional decade and one-half.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

For the reasons set forth *supra*, Defendants respectfully request that the Court deny the TRO Motion. Defendants thank the Court for its consideration of this submission.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     */s/ Rachel G. Balaban*
Rachel G. Balaban
Assistant U.S. Attorney
(718) 254-6028
rachel.balaban@usdoj.gov

cc: All Counsel of Record (by ECF)